UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD L. MATTHEWS,

        Plaintiff,

v.

MARGARET OUELLETTE,

        Defendant.

_____/

Case No. 1:16-cv-117

Hon. Gordon J. Quist

## SUPPLEMENTAL REPORT AND RECOMMENDATION

The undersigned issued a report and recommendation (the "R&R" (ECF No. 19)) which recommended that defendant's motion for summary judgment be granted. Plaintiff filed objections which included a one-page affidavit (ECF No. 21). The district court remanded the matter to the magistrate judge to determine whether this affidavit created a genuine issue of material fact. *See* Order of Remand (ECF No. 23). For the reasons discussed below, the undersigned concludes that it did not, and adopts the determination in the R&R that defendant's motion for summary judgment should be granted.

    **I.**    **Discussion**

    **A.**    **Legal standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

> stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and

(2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff's claims arise from the treatment of a rash. Counts I, II and III alleged Eighth Amendment violations, while Count IV alleged a Fourteenth Amendment violation.[1] It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy

---

[1] These claims are more fully discussed in the previous R&R. The Fourteenth Amendment claim was dismissed as legally insufficient. *See* discussion, *infra*.

3

and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### B. Evaluation of plaintiff's claims in original R&R

In Count I, plaintiff alleged that between July 29, 2014 and December 3, 2014, PA Ouellette "deliberately misdiagnosed" him and prescribed a "placebo." The undersigned concluded that these claims were unsupported by the medical record and did not support a claim for deliberate indifference. PA Ouellette examined plaintiff, ordered lab tests to determine possible causes of the rash, and performed a biopsy before concluding that plaintiff had dermatitis. She initially treated that condition with hydrocortisone cream. Dr. Davis concluded that plaintiff had dermatitis that could be caused by nonspecific inflammation, HPV (warts caused by human papilloma virus), condyloma (genital warts) or acne. PA Ouellette prescribed additional medications as indicated by the laboratory and biopsy results. The Court determined that PA Ouellette's actions did not amount to an Eighth Amendment violation. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004).

In Count II, plaintiff alleged that PA Ouellette was deliberately indifferent to his acute medical condition and delayed his treatment for scabies "to cover up her reckless endangerment." The Court concluded that there was no evidence to support this claim. Plaintiff's examinations, lab tests and biospy did not indicate scabies prior to Dr. Dominguez-Bem's examination on November 26, 2014, and neither PA Ouellette nor Dr. Davis concluded that plaintiff had scabies prior to that date. In short, plaintiff's providers had differing opinions on the

cause of plaintiff's rash prior the November 26th examination. A difference in medical opinion is not actionable under § 1983. *Lane v. Wexford Health Sources (Contreator)*, 510 Fed. Appx. 385, 388 (6th Cir. 2013), citing *Estelle*, 429 U.S. at 107. As stated in the original R&R:

> Assuming that plaintiff developed scabies at some point prior to November 26, 2014, even if PA Ouellette had misdiagnosed this condition, such a misdiagnosis is not actionable under § 1983. *See Farmer*, 511 U.S. at 835. In addition, plaintiff has presented no evidence to demonstrate that he suffered a detrimental effect from any delay in treating scabies. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir.2001). Assuming that plaintiff contracted scabies at some point prior to November 26, 2014, it did not resolve plaintiff's rash which had been afflicting him for two to six years. As discussed, on December 2, 2014, plaintiff reported to PA Ouellette that while his itching was resolved by the cream used to treat scabies, the rash was worse after the scabies treatment.
>
> Furthermore, plaintiff has not established the subjective component of his Eighth Amendment claim. The record reflects that PA Ouellette not only examined plaintiff, but obtained a punch biopsy to determine the cause of plaintiff's skin problem. PA Ouellette's actions in diagnosing plaintiff's condition can hardly be described as evidence of the type of "obduracy and wantonness" sufficient to support an Eighth Amendment claim. *See Whitley*, 475 U.S. at 319.

R&R at PageID.800-801.

In Count III, plaintiff alleged that PA Ouellette misdiagnosed his condition and delayed treatment of "the true nature of the skin condition [scabies] which had been diagnosed by a Doctor as requiring special treatment . . . to save her employer the expense of further medical treatment by a specialist." *Id*. at PageID.801. The undersigned found no evidence to support this claim:

> Contrary to plaintiff's allegations, PA Ouellette began the process for obtaining a dermatology consult (i.e., taking pictures of plaintiff's rash) on October 29, 2014 - about one month before Dr. Dominguez-Bem's scabies diagnosis. PA Ouellette submitted the request on December 2, 2014, after determining that the scabies treatment did not resolve the rash. Nothing in the record suggests that the "special treatment" for scabies was so unique as to influence PA Ouellette's decision-making process. Rather, prison personnel treated plaintiff's scabies diagnosis with

5

> medication kept on hand at the prison. See Medical Records at PageID.173 (plaintiff's treatment included Pyrethrin Lice Treatment 4%- 0.33% Topical Liquid, with order to "Follow directions on package," and Permethrin 5%, with order to "Apply from head to toes and leave on 12-14 hours, then shower to remove the cream. Disp 1 from stock.").

*Id*. at PageID.801-802.

Finally, the undersigned recommended dismissal of Count IV for failing to state a claim for relief:

> In Count Three, plaintiff alleged that PA Ouellette's alleged delay in treating him for scabies violated Eighth Amendment rights. In Count Four, plaintiff alleged that this same conduct violated his due process rights under the Fourteenth Amendment. As a convicted felon in the custody of the MDOC, plaintiff's deliberate indifference claim is brought under the Eighth Amendment, not the Fourteenth Amendment. *See Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) ("[a]lthough the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well") (internal citation omitted). Accordingly, plaintiff's Count Four should be dismissed as legally insufficient.

*Id*. at PageID.792-793.

### C. Plaintiff's objections to the R&R

The issues raised in plaintiff's objections involve the medical history and treatment of his rash. The R&R summarized plaintiff's medical history and treatment as follows stated:

> As an initial matter, plaintiff's allegation that "[h]e has never had any problems with his skin, groin and buttock areas during his [over 10 years of] incarceration" is contradicted by the medical records. In addition, plaintiff misrepresented his medical history to the providers, i.e., in July 2014 plaintiff told PA Ouellette that he had the rash for two years, while in August 2014 he told Dr. Davis that he had the rash for six years.
>
> In summary, the record reflects that PA Ouellette provided plaintiff with ongoing treatment for his rash from July 17, 2014 through May 9, 2016. This treatment included a punch biopsy to determine the nature of the rash, prescribing a variety of medications, providing items to make plaintiff more comfortable (e.g., a cotton blanket to reduce itching and allowing plaintiff to have Vaseline on his person), and a request for a dermatology consult.

R&R (ECF No. 19, PageID.799).

Plaintiff's objections are as follows.  First, the Magistrate Judge relied on "false and misleading facts and information" contained in defendant's affidavit.  Objection (ECF No. 20, PageID.804-805).  Plaintiff's assertion that the undersigned relied on the affidavit is incorrect.  As noted in the R&R, the undersigned relied on both affidavits and the 670 pages of plaintiff's medical records which reflected his years of treatment for the rash.

Second, plaintiff contends that the Magistrate Judge relied on defendant's "false information" in "claiming Plaintiff reported to a doctor that this rash started six years ago." *Id.* at PageID.805.  As discussed, *infra*, plaintiff's medical records contained a variety of statements regarding the origin and duration of the rash.

Third, plaintiff contends that the Magistrate Judge was misled by defendant's affidavit in which she claims to have ordered blood tests showing no dermatological abnormalities.  Plaintiff's affidavit does not address this point.  Plaintiff's medical records speak for themselves.

Fourth, plaintiff contends that the information contained on page 7, ¶ 3 of the R&R (ECF No. 19, PageID.794) is "false and misleading" with respect to plaintiff's complaints of skin rashes to Dr. Davis and the doctor's description of the rash.  The statements referred to in that paragraph are contained in plaintiff's medical records related to his visit with non-party Dr. Davis. The R&R cites the medical records generated by Dr. Davis, which appear in ECF No. 16-1, PageID.138-139.

Fifth, plaintiff objects to statements in the R&R that defendant provided ongoing treatment from July 2014 through May 2016.  While plaintiff states that "the alleged treatment provided by [defendant] was for naught," the medical records reflect that plaintiff was examined and treated for his skin condition during that time period.

### D. Plaintiff's affidavit

Plaintiff's affidavit filed with his objections contains six factual statements upon which his objections are based:

> 1. That during my interview with any of the Doctors for my skin rashes, I never told anyone that these skin rashed [sic] started over (2) or even (6) years before the rashes I was complaining of began.
>
> 2. That the visit with Doctor Dominguez-Ben [sic] was the only time I was informed that my skin rashes were related to "scabies" and that I needed to see a Dermatologist for the proper treatment.
>
> 3. That I was not provided any treatment for 'scabies' until November 26, 2014 when I arrived on an emergency health care visit in a wheel chair with Corrections Officer Hull.
>
> 4. That I have never seen anyone by the name of Doctor Papendick during any of my health care visist [sic], and s/he has never personally diagnosed me concerning this 'skin rash.'
>
> 5. I have never before had an outbreak where my skin became hardened, like an 'Allegator's' skin until I had an outbreak of my current skin rashes.
>
> 6. To date, over a period of almost three (3) years, I do not actually know why my skin is in the condiction [sic], and I have never received any treatment from a Dermatogogist [sic]  for this skin outbreak.

Plaintiff's Aff. (ECF No. 21, PageID.815).

With respect to ¶1 of the affidavit, plaintiff apparently denies telling anyone that the rashes he complained about in 2014 started 2 or 6 years before that date.  In his initial visit with PA Ouellette on July 17, 2014, plaintiff's "History of Present Illness" was given as follows:

> **1. Rash**
> Onset 2 Year(s) ago.  Location was buttock.  The patient describes it as erythematous and itchy. Denies aggravating factors. Denies relieving factors. Pertinent negatives include fatigue, fever, sore throat, urticaria or pain.

Medical Records at PageID.127.

8

A few weeks later, when plaintiff saw non-party RN Morales on August 4, 2014, he reported that the rash occurred six days before he saw Morales (i.e., July 29, 2014). *Id.* at PageID.132. The nurse's notes reflect that plaintiff appeared to draw a connection between the rash and an ex-girlfriend's medical condition several years ago (2009):

> c/o rash spreading to both buttocks, scrotum, back, right hand, legs and arms. States rash very itchy and not getting relief from hydrocortisone cream. Denies any changes in soaps or detergents. States only uses mild soap. Denies being exposed to any chemicals. States even at one [sic] he had all of his linen and bunk bleached out. Denies any allergies. States any drainage [sic] from rashed areas. States back in 2009 that his exgirlfriend had [sic] states that she came back positive for HBV [sic]. States wants to get tested for this. States that sometimes he scratches so much that scratches the bumps open. States almost out of hydrocortisone cream.

*Id.* at PageID.132.

Plaintiff saw Dr. Davis four days later. The doctor's notes from August 8, 2014 stated as follows:

> The patient presents for Dermatitis. This episode began 6 year(s) ago. The symptom(s) are described as moderate and occurs daily. Affected area(s) are scattered on the body including groin and buttocks, and is spreading. The patient describes the affected area(s) as itchy. The symptoms are not associated with contact with chemicals, contact with plants, new perfume, new skin soaps/lotions, rash began before age 2, recent medicines, recent travel and stress. Denies aggravating factors. Denies relieving factors. Associated symptoms include pruritis. Pertinent negatives include bleeding, cracking, crusting, dry skin, edema, erythema (skin), fatigue, hypopigmentation, myalgia, painful rash, scaling and profusive itch.

Medical Records at PageID.138. Dr. Davis diagnosed plaintiff with a "very non specific rash", which was chronic, and gave a differential diagnosis of "inflamitory [sic] (non specific), hpv, condoloma, to acnelike." *Id*.

The gist of plaintiff's claim is that there was an error in his medical history because he did not experience the rash two to six years prior July or August 2014. However, this alleged transcription error does not rise to the level of a federal constitutional claim. Even if both PA

9

Ouellette and Dr. Davis mistakenly recorded this fact, they took extensive steps to treat the rash. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Farmer*, 511 U.S. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley*, 475 U.S. at 319. Furthermore, even if PA Ouellette erred in taking plaintiff's medical history in July 17, 2014, Oullette did not violate plaintiff's federal constitutional rights by relying on the subsequent statements of plaintiff's medical history in records prepared by Dr. Davis (that he had the rash for 6 years) and RN Morales (in which plaintiff appeared to trace the rash to a girlfriend's diagnosis in 2009).

Next, the statements in ¶¶ 2 and 3 of the affidavit refer to a diagnosis of scabies which occurred on November 26, 2014, and appear related to plaintiff's claims that PA Ouellette delayed his scabies treatment for nefarious purposes, i.e., "to cover up her reckless endangerment" and "to save her employer the expense of further medical treatment by a specialist." Plaintiff's claim is meritless. The medical records reflect that PA Ouellette examined plaintiff and performed skin biopsies on October 15, 2014. Medical Records at PageID.155. PA Ouellette examined plaintiff on October 29, 2014, listing the onset of the rash as six months ago (i.e., April 2014), and identified the severity as moderate-severe. *Id.* at PageID.161. On that same day, PA Ouellette requested non-formulary medication (*id.* at PageID.163), which was deferred by Dr. Gary R. Kerstein the next day with the following explanation:

> According to EMR patient is takiing [sic] excessive showers daily and this is likely cause of dermatitis. Discontinue all topicals for the rash. Patient has been advised to stop showering three times per day. Use formulary lotion for dry skin[.]

*Id.* at PageID.165. In this regard, PA Ouellette had instructed plaintiff back on October 1, 2014, "[d]o not take 3 showers daily." *Id.* at PageID.149.

10

PA Ouellette performed a chart review of plaintiff's condition on November 19, 2014 and ordered pictures taken of plaintiff's rash. *Id.* at PageID.168. Plaintiff's appointment for that day was cancelled due to a mobilization at the prison. *Id.* at PageID.170.

On November 23, 2014, plaintiff sent a medical kite stating:

> I am requesting to be seen by a dermatologist. I have had this (full body) rash going on 7 months now. The medical staff here have put me through several rounds of topical treatments. Yet still cannot determine what type of rash it is, nor how to trreat [sic] it!

*Id.* at PageID.171.

The medical records indicate that on November 26, 2014, plaintiff had a "rash covering his entire body" which Dr. Dominguez-Bem diagnosed as scabies. *See* Medical Records at PageID.175. It is unclear whether the doctor met with plaintiff or diagnosed the condition remotely (i.e., the record refers to "MP3 to HC clinic and diagnosis of scabies"). *Id*. Either way, the diagnosis was made, plaintiff was prescribed Pyrethrin Lice Treatment, provided with that treatment, and referred to PA Ouellette for a one-week follow-up. *Id*. The fact that plaintiff received a diagnosis for scabies on November 26, 2014 does not establish that plaintiff had scabies when PA Ouellette examined him back on October 29, 2014. PA Ouellette's October 15th punch biopsy suggested atopic dermatitis (eczema). *Id.* at PageID.153-157, 190, 768.[2]

Plaintiff's affidavit also stated that when Dr. Dominguez-Bem diagnosed plaintiff with scabies, plaintiff was informed that he "needed to see a Dermatologist for the proper treatment." That is exactly what PA Ouellette attempted to arrange after plaintiff's follow-up appointment. However, as discussed below, the request was denied by Dr. Papendick.

---

[2] The comments for the "left upper back" specimen stated "this may be secondary to atopic dermatitis" and that "the possibility of Grover's disease should also be considered." Medical Records at PageID.768. The comments for the "right calf" specimen stated "changes consistent with insect bite" and that "other possibilities such as drug eruption, allergic contact dermatitis, nummular dermatitis and "ID" reaction should also be considered." *Id*.

11

In ¶ 4 of his affidavit, plaintiff is apparently attempting to create a question of fact by claiming that he had "never seen anyone by the name of Doctor Papendick." Defendant does not claim that Dr. Papendick personally diagnosed or treated plaintiff. Dr. Papendick was a medical reviewer who responded to PA Ouellette's request to refer plaintiff to a dermatologist. If any single document reflects that PA Ouellette was not deliberately indifferent to plaintiff's serious medical needs, it is Ouellette's December 2, 2014 request that plaintiff be scheduled for a dermatology consultation:

> Healthy 47 Y/O AA male with a 6-7 month history of generalized pruritic rash reports worsening of the rash. Failed treatment with vistaril and betamethasone. Tissue specimen sent for analysis. Report suggests Atopic dermatitis. Pictures taken 26 Nov 14 and 2 Dec 14. Rash appears worse after one topical application of Permethrin. Exam --> anxious AA male with a generalized generalized hyperpigmented rash. Integument of right lower extremity noted to have a large dry and scaly area.

Medical Records at PageID.194. Dr. Papendick denied the request for a dermatology consultation, stating, "Medical necessity not demonstrated at this time. Consider using Betamethasone valerate 0.1% ointment BID." *Id*. Consistent with Dr. Papendick's instructions, PA Ouellette ordered plaintiff "Betamethasone valerate 0.1%." *Id.* at PageID.196.

In ¶5 of the affidavit, plaintiff stated that he had "never before had an outbreak where my skin became hardened, like an 'Allegator's' skin until I had an outbreak of my current skin rashes." This new statement related to plaintiff's medical history does not create a genuine issue of material fact with respect to PA Ouellette's treatment of plaintiff. Plaintiff's condition and treatment is documented in the 670 pages of medical records, which reflect that plaintiff received significant attention and a number of treatments to control the rash.

Finally, in ¶ 6, plaintiff stated that he has not seen a dermatologist in three years. Assuming that this statement is true, PA Ouellette was not deliberately indifferent with respect to

seeking out a specialist. As discussed, she requested a dermatology consultation back in December 2014, which Dr. Papendick denied.

## II.     Recommendation

For the reasons set forth above, I again recommend that defendant's motion for summary judgment (ECF No. 14) be **GRANTED** and that this case be **TERMINATED**.


Dated:  February 14, 2018               /s/ Ray Kent
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).